***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all times relevant defendant is a duly qualified self-insured and Sedgwick CMS is the servicing agent.
3. On 10 June 1995, plaintiff suffered an injury by accident in the course and scope of his employment with defendant-employer.
4. Defendant began paying plaintiff temporary total disability benefits on 10 June 1995 and said benefits continue.
5. Plaintiff's former wife, Angela Conerly, provided attendant care services for plaintiff from the date of the accident through 27 August 1998.
6. The parties stipulated to plaintiff's medical records and rehabilitation records from Sedgwick James of the Carolinas, St. Joseph Hospital Home Health Agency, St. Joseph of the Pines, Interim HealthCare, IntraCorp., Cape Fear Valley Medical Center, Learning Services Corporation and Carolina Rehabilitation Associates, P.A.
7. The issue at the hearing before the Deputy Commissioner was to determine the amount of compensation plaintiff's former wife, Angela Conerly, is entitled to receive for the attendant care services she provided to plaintiff following his compensable accident.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff sustained a compensable injury by accident on 10 June 1995. As a result of his injury by accident, plaintiff was permanently paralyzed from the neck down.
2. Following the accident, plaintiff was in inpatient care at Cape Fear Valley Medical Center and Southeastern Rehabilitation Center for 131 days.
3. Plaintiff resided in his home on the following dates: 3 November 1995 through 6 June 1996; 18 July 1996 through 3 October 1996; 6 October 1996 through 26 November 1996; 27 November 1996 through 4 December 1996; 6 June 1997 through 23 July 1997; 30 July 1997 through 28 January 1998; 5 February 1998 through 11 May 1998; 26 May 1998 through 27 August 1998. The remainder of the time during the above enumerated periods, plaintiff received inpatient care at various hospitals and facilities.
4. During plaintiff's initial stay in the hospital, Mrs. Conerly received instruction from the personnel of the Southeastern Regional Rehabilitation Center regarding caring for plaintiff upon his return to the home. Mrs. Conerly was shown how to lift plaintiff in and out of his wheelchair, how to perform catheterizations and maintain plaintiff's bowel program. She was taught how to administer plaintiff's medications and how to perform plaintiff's physical therapy exercises. Plaintiff is also a diabetic. Prior to his injury his condition was controlled by diet, but after the injury, Mrs. Conerly was required to monitor plaintiff's blood sugar and to administer insulin shots. She was also taught how to bathe plaintiff, and how to get him back into bed so she could dry him and dress him. In addition to performing these tasks, Mrs. Conerly was required to turn plaintiff in his bed every two hours, 24 hours per day, to prevent skin breakdown. Mrs. Conerly set an alarm clock to note the passing of each two hours so that she would never sleep through a necessary session.
5. While in the hospital following his injury by accident, plaintiff became dependent on morphine. Upon his return home, plaintiff went through withdrawal over a period of four months. During this time, plaintiff required additional care beyond that listed above, including more frequent washings of plaintiff and his bedclothes due to profuse sweating and sickness, and constant monitoring to ensure that plaintiff did not over-medicate in an attempt to appease his addiction.
6. While plaintiff's physicians did not specifically prescribe 24-hour a day care for plaintiff, it is noted in the Home Health Certification and Plan of Care forms filed by St. Joseph Hospital Home Health Agency that plaintiff required 24 hour supervision. Also, plaintiff's need to be turned in his bed every two hours and the testimony of Mrs. Conerly about the level of care and supervision plaintiff required which is accepted as credible, further supports a finding of fact that plaintiff required 24 hours of attendant care per day.
7. Mrs. Conerly provided 24 hour attendant care services during those period when plaintiff resided at his home. During some periods of time after plaintiff returned home, Mrs. Conerly was assisted in the care of plaintiff by nurses' aides provided by St. Joseph Hospital Home Health Agency. The aides were scheduled to be present in plaintiff's home for four hours per day, seven days per week; however, they were late an average of three days per week, and on an average of one day per week they failed to appear at all. Mrs. Conerly testified and the Full Commission finds that the aides were only qualified to bathe, dress and prepare food for plaintiff, and that Mrs. Conerly had to instruct the aides on how to provide care to plaintiff. Mrs. Conerly performed all the other required care of plaintiff that the aides were not certified to do when the aides were present.
8. Beginning on 1 July 1998, an LPN was provided to assist in plaintiff's care. The LPN was present for four to six hours per day, six days a week. She performed catheterizations and provided plaintiff's medications during the time she was present in the home.
9. Although at various times while plaintiff was living at home Mrs. Conerly was assisted in caring for plaintiff, the assistance was minimal in nature (until 1 July 1998 when an LPN was assigned) and did not relieve Mrs. Conerly of a majority of her duties in caring for plaintiff. Even when assisted, Mrs. Conerly remained "on call" to care for plaintiff 24 hours per day. However, the Commission recognizes that during those periods when outside assistance was provided and during some periods when plaintiff's need for direct care and supervision was not as great, Mrs. Conerly was given some short periods of respite from caring for plaintiff. Therefore, the Full Commission finds that Mrs. Conerly provided attendant care for plaintiff an average of 16 hours per day during the periods plaintiff resided at home up to 1 July 1998, and that during the period from 1 July 1998 through 27 August 1998, she provided attendant care to plaintiff an average of 12 hours per day. The Full Commission also finds that based upon the training Mrs. Conerly received from the personnel of the Southeastern Regional Rehabilitation Center and from the actual practice of taking care of plaintiff, the level of care she provided to plaintiff was comparable to that which would have been provided by a Certified Nurses Assistant (CNA).
10. The attendant care services Mr. Conerly provided to plaintiff were reasonably required to provide relief and maintenance for plaintiff following his compensable injury by accident.
11. Plaintiff and Mrs. Conerly separated on or about 8 September 1998. Plaintiff resided at Learning Services from 28 August 1998 until 9 May 1999, when he went to live with his a brother. At some point subsequently, plaintiff was placed in a retirement home which provides 24 hour care by nurses and aides.
12. In the area where plaintiff resides, LPNs without business overhead receive between $9.00 — $14.00 per hour and CNAs receive between $6.00 — $7.00 per hour.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Angela Conerly provided attendant care services to plaintiff following his compensable injury by accident on 10 June 1995, which were comparable to services which would have been provided by a CNA and the attendant care services she provided were reasonably necessary to provide some relief to plaintiff. N.C. Gen. Stat. § 97-25.
2. The dates during which Mrs. Conerly was primarily responsible for plaintiff's care for 16 hours per day are as follows: 3 November 1995 through 6 June 1996; 18 July 1996 through 3 October 1996; 6 October 1996 through 26 November 1996; 27 November 1996 through 4 December 1996; 6 June 1997 through 23 July 1997; 30 July 1997 through 28 January 1998; 5 February 1998 through 11 May 1998; and 26 May 1998 through 30 June 1998. From 1 July 1998 through 27 August 1998, Mrs. Conerly provided an average of 12 hours of attendant care to plaintiff per day. The attendant care Mrs. Conerly provided during these periods was reasonably necessary to provide relief to plaintiff and lessen plaintiff's disability, and defendant is obligated to pay Mrs. Conerly for the attendant care services that she provided. N.C. Gen. Stat. § 97-25.
3. Defendant was aware of plaintiff's need for attendant care and that the responsibility for such care was placed upon Mrs. Conerly. Considering the circumstances of this case, Mrs. Conerly's delay in filing a request for payment for the attendant care services she provided was justified.
4. Mrs. Conerly is entitled to payment by defendant for the attendant care services she provided to plaintiff during the above listed periods when plaintiff resided at home at a rate of $7.00 per hour. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Angela Conerly is entitled to receive compensation paid by defendant for the attendant care she provided to plaintiff at the rate of $7.00 per hour for an average of 16 hours per day during the following periods of time: 3 November 1995 through 6 June 1996 (215 days); 18 July 1996 through 3 October 1996 (81 days); 6 October 1996 through 26 November 1996 (52 days); 27 November 1996 through 4 December 1996 (8 days); 6 June 1997 through 23 July 1997 (48 days); 30 July 1997 through 28 January 1998 (182 days); 5 February 1998 through 11 May 1998 (35 days); 26 May 1998 through 30 June 1998 (36 days), and for 12 hours per day from 1 July 1998 through 27 August 1998 (58 days). Therefore, Mrs. Conerly is entitled to payment at the rate of $7.00 per hour for a total of 657 days at 16 hours per day and 58 days at 12 hours per day, or for a total of 11,208 hours, which equals $78,456.00.
2. Plaintiff's counsel is entitled to 25% of the amount due Mrs. Conerly in Paragraph 1 as attorney's fees. Defendant shall pay $78,456.00 due Mrs. Conerly directly to plaintiff's counsel. Plaintiff's counsel shall deduct $19,614.00 and disburse the balance to Mrs. Conerly.
3. Defendant shall pay the costs, including expert witness fees of $125.00 to Nurse Kleffman and $188.00 to Nurse Rose.
This the ___ day of June, 2002.
 S/___________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________________________ DIANNE C. SELLERS COMMISSIONER
 S/____________________________ RENE C. RIGGSBEE COMMISSIONER